Dr. 2-17-0498 Richard Anderson and Dan Anderson, individually and on behalf of others, similarly situated. Plaintiff, plaintiff, in each other's part right courts, not individually, but in their capacity as courts of the circuit court of Lake County and as a representative of all courts of the circuit courts of all counties within the state of Illinois, defendant, appellee. Arguing on behalf of the plaintiff's appellants, Mr. David K. Novoselsky. Arguing on behalf of the defendant's appellee, Mr. John E. Schmidt. Thank you. All right, Mr. Novoselsky. Sorry, it just takes me a little longer now. I understand. Yeah, hit me just beyond the sight. May it please the court, David Novoselsky, for the Aldersons, I have a familiarity, not simply with this case, but with cases going back approximately five or six years. The Gassman case was a case that myself, my son, and Joe Tye handled, which was preceded by approximately three or four years of other litigation all over the issue of charging a fee for faking a non-final order. Before the Gassman case came up and it's in the Gassman decision, we had a situation similar to that before this court. The clerk of the circuit court of Cook County, after the case started, said, I will not do this anymore. I have a new policy and I promise not to do it again. Now, there's no question here that the present occupant of the clerk of the circuit court in Lake County is a trustworthy individual. Nobody is questioning her integrity or her intentions. The problem is there's been a history of not entering orders to compel compliance with what this clerk also agrees is the correct interpretation of the law as cited in Gassman. The circuit court here accepted a statement from Ms. Weinstein that it was her intention not to charge these fees in the future and that she would maintain that. Her position was fairly straightforward. This was, I guess you'd call it deja vu all over again on deja vu. We'd had four or five years of these promises, arguments about whether the promise was being followed. And Gassman itself, interestingly enough, when it went back, the circuit court clerk convinced the next trial judge who had the case that once again, she wouldn't do it. That a tender, very similar to this, was the tender of fees to Mr. Gassman was sufficient. And we're now back upstairs before the same, hopefully the same panel, which as I understand is how it's assigned, to get that result. So we're looking at almost seven years of fighting over something where the legal issue had been decided. Now in the present case, the clerk did not dispute that the Gassman case controlled the proper application of this statute. And that a fee should not be charged for vacating a dismissal for one prosecution. Then why, what purpose would it serve if Gassman is controlling for us to, or for the circuit court in Lake County to require this order? The circuit court clerk agreed that the Gassman rationale, in other words, you don't charge a fee to vacate a DWP, was her correct interpretation of the law as well. There's no dispute here. Both sides agree that a fee should not be charged. The dispute here was the refusal of the trial court to enter an order under the theory of mootness. Now the original complaint he asked, not simply for a refund, but for a writ of mandamus to compel the clerk to number one, no longer charge the fee, and number two, to return the fees to all similarly situated parties. Which should be fairly straightforward. The clerk, like every other clerk, has very carefully put together, call it audit if you will, it appears in the administrative office of the court. The office of the Supreme Court, every year for every county and every, it's very, very detailed, shows exactly how much is collected for various purposes. So this would be something fairly simple to do. To return the fees to similarly situated parties, wouldn't the class have to be certified? Of course, we never got that far. Right, I mean, because the settlement was tendered before the motion to certify the class was made. Yes, sir. I mean, you agree that Barber controls that situation? Barber does, except for the exceptions to the mootness doctrine. The first one being, we had asked for a court order, a writ of mandamus to require the clerk to do it. She declined to do that, so it's an incomplete tender. If you look at the Campton case out of the Seventh Circuit, which has been cited repeatedly by the Illinois courts. The settlement, what you wanted, although you never asked for dollars, the tender was the money, and while the fees for this litigation may not have been accepted, the fees for the original $50 was accepted, was it not? There's a slight dispute as to the purpose of the argument the court construed as accepted. It was cashed. It was cashed by somebody else, unfortunately. The attorney and the firm that had entered into the first fee had left, which was the difference from who's currently counsel here, along with myself. There was a dispute as to whether it actually ever got back to the plaintiff. To the extent of this argument. But the problem is, whether it got back to the plaintiff or not is not the real issue. It was returned to an attorney who was somehow involved on behalf of your clients, and that attorney cashed that check. I would be happy to concede that for the purpose of this argument, that would be an issue of fact, which the trial judge disposed of, and I don't think it was to the use of discretion to do it. The question becomes, was it a complete tender? Because it did not tender agreement to the order binding the clerk and her successors. And that was the issue there. It's not simply the money that went back to the Aldersons. It's whether or not the clerk should have agreed to an order binding not simply herself, but her successors. But the law in place makes it clear that she can't, or a circuit clerk can't do that. And now that it has been brought to the attention of this particular clerk, she's indicated she will follow the law and not do it. I understand, which again, we come to two matters. Number one, given the precedent we've had in the one county where this has gone on. But how can you judge the future conduct of this circuit clerk based on the conduct of another circuit clerk? It's not a question very respectfully of conduct. It's a question of this particular clerk is very efficient. No one is questioning her intention to do this. She, however, sits for a certain period of time subject to re-election. A promise by one individual does not bind her successor. There's no reasons, in other words- Then you would be asking for an order against the office, not against this circuit clerk. Right. And was that, how was the office and any future clerk before the trial court? We did it, not in her official, the defendant here, Ms. Weinstein, was not in her personal capacity, but in her official capacity. Correct, but that would be an order that would bind her. How would a future clerk to be named later ever be under the jurisdiction of the trial court at the time you're asking that the order be entered? Because we asked for the office itself to be bound. Otherwise, you could never have an order binding on any elected official in the state of Illinois. That's my question, how would you do that? You do it by entering the order against the office itself. If the office later wishes to change its position, it goes before the court and has to be relieved from the consequences of that order. The problem we have here, and again, I don't think Ms. Weinstein would, given her tenure of office so far, she is an efficient, ethical individual. No one is suggesting that she would not follow her promise. The problem begins with, there have been other clerks who have not been, in other words, we're not trying to individual. Excuse me, we're not trying to bind the individual. Because the minute she left office, they take the position, you didn't bind me, you bound my sixth predecessor. That's why we asked specifically, as we did in Gassman, that the court address the office itself. Because if the office has a policy of charging fees in a certain fashion. Wait a second, so you want an order that would direct policy? No, ma'am. Okay, but that's what you were just saying. No, I'm saying the promise that it will be the policy of this office, the one that we're given is the policy of this office, not to do that anymore. Great. Our position, whether you call it a policy, it should be a finding in a binding order under Riverbend Amos by the court. That the charging of this particular fee is prohibited. But I agree with the court. It's always a problem with, are you binding policy or are you binding conduct? Our position would be conduct. Otherwise, no public official would ever be bound. Why would this order be different than any other order? For example, if the trial court had done this and then someone would come in the following week and say we want an order that says on every civil filing, the clerk shall only accept a fee of this much. And on every civil answer, the clerk shall only, I mean, what's the point of an order saying follow the law? Exactly that. Presumably, a judge coming in afterwards, let's say this order was put into place. Party comes in and says, judge, I would like the court to change a different fee. The distinction is under our constitution, as the court's aware, and under the federal constitution, the judicial branch interprets the law, the executive branch executes the law. So here, the judicial branch has already made at least an adjustment so far. And according to this clerk, she concedes that the fee is improper. The question becomes, can the court say, fine, here's a correct interpretation of this law. Do not charge this fee to the office. If the office or another individual comes in, they would ask, presumably, either the court that entered it or a successor judge to say, look it, we believe that's an improper interpretation. That's the problem. That was really not my question. My question is then what would prevent someone next week from coming into court and saying we want a mandamus to say to the circuit clerk, another specifically delineated fee or the absence thereof, this is what you shall charge. So the arbitration fee, you can only charge that much. What's the point of an order telling someone to follow the law? And answer a question with a question. What's the point of having the court review the conduct of public officials? Conduct. This is conduct, it's charging. Conduct is a past consequence, not a future act. And that's where I have a dilemma with your request for a mandamus. I respectfully disagree for this reason. Fair enough. If you simply go, in theory, damages or returning the money here. Without the mandamus, okay, we've taken care of everything up to this point. The issue on mandamus is, in fact, to address future conduct. The, I'm trying to remember the name of the case. The prior, one of the prior clerks in Lake County did not follow Supreme Court precedent. The Illinois Supreme Court, I think it's a supervisory order, says you will follow this. And if you don't follow this, the court will take steps to, I didn't say remove the clerk, but would deal with it. So you have had public officials who have declined to follow Supreme Court precedent or the interpretation by a court such as this of the proper application of law. If without that, without going forward, this court becomes, or any court becomes worthless in the sense of an executive branch official, does what that official believes is appropriate, not with this court, which is the arbiter of the law. But in a situation like that where a public official did not follow the law, and did so consistently, then that action would be appropriate. Here, the public official has said, I was wrong, and I will not do it again. So what is the point of the order? She has acknowledged that it was a mistake. And she is now complying with 705 ILCS 105 27.2 AG1. As of today, and that's the problem. But she has taken an oath when she became the clerk to follow the law, which she now has had clarified for her, and she accepts that. Again, I will very respectfully disagree because nothing binds her from changing her mind, let's say another opinion comes down, qualifying Gassman, for example. Or another opinion doesn't come down. Ms. Weinstein leaves office tomorrow. She is elevated to the state senate or something. And her successor said, I don't think Gassman's right. I'm going to start charging fees. You're then putting the public into a situation where they're required to go to court continuously to get the same relief they should have gotten the first time. There's nothing saying that she'll follow the law, that she'll follow the prior order, because that's exactly what happened with the prior clerk. Refused to follow the order, the Supreme Court had to step in. The order will not accomplish anything if the party is not willing to follow it. Right now, Ms. Weinstein's willing to follow it, and Gassman is precedent. It's sitting out there for everybody who wants to see it, and there is no class in this case. I understand the court's position. I apologize, I don't necessarily agree because we do have history. Was it Santana, whoever ignores history is doomed to repeat it. When you have clerks who are individuals, and you simply rely upon their integrity. You can finish your thoughts. Their integrity. Then you're placing the public and the judiciary at risk of conduct where the individual changes his or her mind. And that's the purpose of a mandamus. You don't, the concept of waiting for something to happen. And again, Ms. Weinstein leaves tomorrow, a new clerk is appointed or elected. And it's, I don't agree with Gassman, I'm in charge of this. So this is actually a prophylactic measure, which courts recognize. Even the exception, public interest exception recognizes it too. The capable of repetition. This is capable of repetition, regardless of the integrity of the clerk in Lake County, which no one challenges. But even in those cases, we're only deciding that case. In the capable of repetition cases, we're only deciding that case. Yes. It comes up a lot of times in distributing medication in the mental health setting. We're only saying, in this case, this is capable of repetition between these parties. So we're going to enter an order in this case that will guide them in the future. We don't say for all cases, for anybody that comes before the court, we're entering basically a supervisory order on how to run your office. Again, I think your honor is correct, but this is different. This is a statute being applied in a theoretically uniform manner within this county. Which is one of the reasons we also requested class status, so you don't have Kane County going another way, DeKalb County going another way. It's for the purpose, the two exceptions are, it's important for the guidance of the public official. Second, it is capable of repetition. It's not limited simply to the Aldersons. The Aldersons came in and said, look it, we would like this, not just for our sake, but for all litigants to be ensured that they will not be charged a fee that everyone concedes shouldn't be charged in the first place. The other issue in the reform is, you have money that has been taken by the clerk. She acknowledged this was improper. One of the requests was to return that money to the people who paid it. If you do it case by case by case, how many people are going to hire a lawyer or go in pro se to argue about $50? Well, that's the purpose of the class, and the class was never, well, the class was requested generally in the complaint. But there was never a motion to certify a class. Actually, there was one filed after. Right, right. And the point of our position is, the mootness doctrine isn't triggered when you have a public interest exception. And that's, I mean, yes, we did argue about it. The money should come in, but except for the sake of this argument, you clearly have a public interest exception. This court couldn't say reverse there's a class. The court would have to send it back to have the trial court decide whether to certify the class or not, send out notice, allow the opt-out. I'm very familiar with the procedure. And this court is very familiar with the Supreme Court and their directives. Yes, ma'am. And Barber says, when it's over, it's over. The fact that the request to certify comes after is of no moment at the time. Again, Barber, I believe, recognizes exceptions. The courts have recognized exceptions. Principally, under the public interest exception, which Barber doesn't reject. It wasn't an issue in Barber. Here, when you're dealing with an official, the courts have said, public interest focuses on just that. Is it something of public interest? Is it something that's capable of repetition? I agree with the court. Barber is the law. I've been involved. Most lawyers now simply file their motion simultaneously with the complaint. Well, just Monday, as a matter of fact, on June 1st, the first district issued another case, Maurice Grimes versus Sage Telecom Communications. Are you familiar with that one? I could say yes, but then I'd be lying to the court. And judges there, Judge Hall, Justice Hall, Justice Reyes, and we are not the Supreme Court. The Supreme Court has told us how to rule, and we shall do so. Thank you. Now I remember, glancing through it, I did not read it in detail. They affirmed the denial of the law, but again, it's, all right, I don't agree. It's not a public official, but it's the same concept, that this is how we are told to proceed. And unless someone higher tells us otherwise, we're bound by that. Again, I don't disagree. I think the circumstances, you're correct, Your Honor, I do remember the case now. It was not a public official. It was not a statewide practice. Well, it was with this telecom system, but that's- With the telecom system, again, but it talks about public interest in the sense of dealing with a public official, or a public, or an application of the statute by a public official. Thank you for letting me go over my- We don't have time for a response. Thank you. Thank you very much. Mr. Schmidt. Okay, just to be fair, I'll ask you if you're familiar with the sage, Morris Grounds versus Sage Telecom. I was not, Your Honor. Well, then you're both in the same spot, so we can proceed. Thank you very much, Your Honor, and may it please the court. I'm Assistant Attorney John Schmidt, and I represent the clerk of the Circuit Court of Lake County, who asks for affirmance of the Circuit Court's decision on Moveness Grounds. I'll start with the two exceptions to Moveness that counsel was speaking about. With regard to the public interest exception, there is a public interest at stake in this case, and we don't deny it. But one of the criteria for applying the public interest exception is that the court needs to provide authoritative guidance to the public officials. That's been done already in the Gassman decision. And approximately 30 days after that decision, the clerk of the Circuit Court of Lake County followed it and refunded the money to the Aldersons. So that criterion simply is not met because the guidance is not necessary in light of Gassman. The other exception is for matters capable of repetition and evading review. So the evading review part must be met there. And here, the Gassman case illustrates that if for some reason this type of case came up again, it does not evade review. And counsel indicated that the situation in Gassman was like the one here. I think it was very different. Here, the clerk acquiesced, followed Gassman, and paid the refund to the plaintiffs. Must we guard against future clerks simply ignoring Gassman? I don't think so, Your Honor. And I think a test for that, and this is a doctrine that I think is known as voluntary cessation. If a party voluntarily ceases conduct that a plaintiff wants to stop through mandamus or through an injunction, courts have looked to whether it's clear that the conduct is not reasonably expected to recur. And here, I believe we have that situation in light of Gassman. Gassman is a decision out of the appellate court, and appellate court clerks are bound to follow the law. You mean circuit clerks? Circuit clerks, I'm sorry. Appellate court clerks presumably as well. But I did mean circuit clerks, and I apologize. Circuit clerks are bound to follow the law. So I don't think it would be, this is a situation where this would be reasonably expected to recur. In Gassman, unlike this case, the clerk contested the merits. The clerk argued that, Clerk Brown in Cook County argued that she was allowed to charge the fee, and the courts rejected that argument on the merits. I've looked at that opinion. I don't see anywhere in that opinion where there was a promise to pay. And Mr. Novoselsky cited one other case, I believe Schacht, for this alleged history of the clerk's promises to pay. But Schacht involved something very different, and that was an appeal from a judicial reassignment order, which was very obviously a total vacutory as well. And that was an obvious mistake on the clerk's part. And there was, I believe, payment in that case, which mooted it out. So, Your Honor, I believe that the circuit court was correct in not applying the public interest exception here, and in concluding that the case was moot. This is something that I don't believe would be reasonably expected to recur. I don't think the test requires elimination of any possibility that it will recur. And if it does, litigation is always an option, again, for any parties who are victimized by this. And I think there would be a greater awareness now in light of Gassman that this practice should stop, which is what the circuit clerk of Lake County has done. She has ceased the practice of charging fees. Mr. Schmidt, about a year ago, or almost two years now, there was a bit of a game changer in this type of case with the Campbell-Ewell case at the United States Supreme Court, talking about tenders. And if a tender isn't accepted, it's as if it never existed and the case could go forward. Does that affect this particular case? No, Your Honor, because the state has adopted a different rule. And we cited the appellate court and the courts of Illinois have always followed a different rule. We cited the Gattrum case for that proposition. And Gattrum details the history in Illinois in which a tender is sufficient. And I think that makes sense. I don't think that a plaintiff should be able to prevent a case from becoming moot by refusing relief that's being proffered to them. I don't think that serves the interests of judicial economy very well. It's a situation where it's not necessary for the courts to decide the matter anymore because effective relief has been tendered. And we believe in this case effective relief has been tendered both in the form of the refunds and in the form of the new policy under which no fee is required for this type of motion anymore. So basically our position is the case did become moot when this relief was tendered. And no exception to mootness would apply here again because the Gattrum decision does provide authoritative guidance to clerks of courts so it is no longer necessary for this issue to be decided. And also because this is not a matter that's capable of repetition and evading review. We've cited cases where that exception was applied or was more appropriate. In mental health cases, for instance, there's a limited duration to commitments, 30, 60, 90 days. So a case will become moot before the commitment can be challenged. Here when a practice is being challenged and when money is being sought, refunds are being sought, that case is not going to evade review as Gassman shows. If we accepted the state's suggestion and resolved the case as an affirmance, counsels argued that the other people that may have been in the same situation are being discriminated against. Who's going to hire an attorney to come in for a $50 refund? It is still possible for them to come in and ask for their money back, correct? Correct. They could ask the clerk's office for the money back too. It wouldn't be a class action, it would be fine. That's always a possibility too, Your Honor. Yes, there's nothing to preclude that. That's correct. So we're not preventing anything or preventing any refund or remedy to other persons? No, you're not, Your Honor. You're not. Are you taking the position that the case became moot when the $50 was tendered or when the court costs were tendered? They were about a month apart or so, a couple weeks apart. I would say the court costs did it, Your Honor. I don't think the court needs to decide it because the court costs were tendered before, at the moment, two weeks before the cost was issued. I don't have to decide. It doesn't mean I don't want your opinion. So did you think that a total tender includes payment of costs? Here's everything. Here's everything you asked for, in other words. Your Honor, I would say yes because without, I think the thing to look at would be, has plaintiff's injury been redressed? And in this case, it would be the individual plaintiff's injury. And the only, well, I think maybe the other question is, the issue here is in 705, was a DWP a final order? It is not. And therefore, it's the $50 to refile that's the real injury, correct? Yes, that is. I suppose you could say, though, that with just the $50, the Alderson's still would have been out the 291 and would still, in a way, perhaps be harmed, suffer some harm. So I, you know, my answer would be that the 291 would be included. The 291 would have, plus the promise to cease the practice would have moved it out. So then you're, you would take the last of the three dates, which I think if I got my dates correct, it was 210, the $50 was paid. Right. March 10th, the 231, and then a couple days later, 313, he affidavit, I don't know if it was signed or if it was tendered to the court on that day. So that's the last piece for mootness, in your opinion? It is. Well, it is. That's what the plaintiff had asked for in their original complaint. And therefore, to complete the tender, that would be your position, right? You can think about that for a minute. I mean, I know. I think there's a possibility that the 291 itself would have done it. And the reason I'm saying that is once the Alderson's received the $50 plus the 291, they had suffered no injury, and even a mandamus was not going to do anything for them. But again, even if the court disagrees and concludes that the promise was necessary to move the case out, that still occurred two weeks before the motion for class certification was filed. And so for those reasons, Your Honor, we ask for affirmance of the circuit court's dismissal. Thank you. Mr. Novoselsky? You know, they do this, I think this is year 46 for me. I get to use expressions that when I was just starting out, I would have shot my opponent for. The principal issue here, unlike Barker, perhaps it needs to be clarified by the Supreme Court. I know this court must follow what it believes is Supreme Court precedent. Barker didn't deal with an issue such as we have here. Here, it wasn't simply the money. The mandamus was requested to protect, presumably, an entire class. Also would have protected the ability to recover. I understand under Barber, the court's position and the state's position, pardon me, the court's position, is that we gave you everything you asked for. They didn't. Unlike Barber and the other cases which deal simply with monetary damages, here we're dealing with a policy decision. Those cases that have gone the other way, unfortunately, primarily in the federal system, not in the state system. Have drawn a distinction. The other comment I have, which I think goes back to Justice John Marshall, who took it from somebody else, was we're a government of law. Not a government of men, or now of men and women. The problem we have here is we're treating, the state would have us treat this matter as a question of individual promise made by clerk wines. The same promise has been violated repeatedly and is still up in the air in the Gassman case and its predecessor. Shack was a fee case. And at that point, the appellate court said, no, they've promised exactly what you see here. And within days that we had an affidavit attached, I handled Shack as well. Showing the clerk was still charging us. And then was requiring people to go to court and file a lawsuit to get $50 back. And yes, I agree that another party can do that. And the same arguments can be made, even if there's a class certification motion filed. And in the public interest, you said that Gassman has gone back upstairs to the first district. If they come with a different resolution or a more stringent resolution, then that would be covering the public interest. Not anywhere outside of Cook County. We have 102 clerks of court. There are cases where, many cases, where the clerks of court or other officials in one county or another have disagreed.  In the interim, if you look at Cook County as an example, a very large amount of money has been taken. The clerk's original proposal there was, well, you have to come in and petition to get your money back. We'll then review your petition. If we think it's appropriate, we'll give it back to you. I'm not suggesting that's happening in Lake County. Interestingly enough, the issue is still in suit for Judge Barones in Lake County on a slightly different matter where it goes beyond DWP. It's cited in our brief. Again, we're talking, this statutory authority deals with a final order. And there is a difference in a foreclosure action with final and final and appealable. I agree. And that has to be litigated and probably will be in that case. It is. My point is, this issue shouldn't have to be litigated again. There's no reason for a party to have to keep going back to court. Let's, again, by their theory, somebody goes to court and says, look, I have my $50 taken. I'd like it back. And then also I can order affecting everybody else. The clerk says, fine. I agree not to do this. I won't do this in the future. Here's your $50. That can go on and on and tonight. We keep talking about other people, but didn't your clients receive their complete satisfaction when they received their $50 and then all their full payment for the court costs to bring this matter? Except, and I agree, except the mandamus. The mandamus, you keep talking about other people. And again, that gets to the class and that gets to, you know, what might happen in the future. Is there evidence or is there evidence in your complaint or evidence in the case that your clients had numerous cases pending at this time? They had the one case and your Honor is correct. We treat this solely, solely as a monetary issue. I probably wouldn't be standing here. The problem comes up is I believe under the public interest exception to make sure not only this doesn't recur, but that everybody who paid the money will get their money back. There's nothing to stop the clerk every time a new class action is filed to simply say, well, I've promised, Judge, we don't need, I'm sorry, we don't need a mandamus, which is what has gone on repeatedly in the other cases. And again, it sounds like I'm trying to suggest that this particular clerk would not follow the word. My problem is, as I said in the brief, she can leave tomorrow and it's the end of the day. Let me ask you this, is there a difference in your remedy if this clerk hypothetically were to begin to charge this fee again? Okay. Would there be a difference in your remedy with or without a mandamus? Yes, I believe that there is an order in place. The issue is that you violated the order. Without an order in place, you have to go back to square one and have the court declare that the practice is improper. The court, no trial court, is barred, excuse me, bound by a decision in a different appellate district. Right now, Gassman is... Wait, wait, wait. What did you just say? Don't think a public official outside, let's say... You said no trial court is bound by an outside the district appellate court opinion? They're bound to the extent there's no contrary decision. Right. The argument can be made here that if this court affirms, this court has said it's okay to accept the promise. That doesn't prevent the clerk or the clerk's successor from changing their mind. I agree with you. When there's only one decision within the state, the trial court, no matter where it is within the state, is supposed to follow it. Which right now is Gassman. Yes, I agree. And right now, there's 102 counties, I don't know what's going on in the other counties. The class would bind the other parties. It would not have a class. Well, it was dismissed before the class issues could be heard. And this may require a change in practice strategy on when to try to certify the class. But it doesn't change the law that that class was not requested to be certified until after the clerk made these tenders and agreements. I think the court has, Your Honor, has identified the facts. The position was, and I'm not going to go into why the motion said on some of the clerks, a clerk within the trial system and it's stamped there and for some reason didn't get filed. It's not, this court doesn't have to remedy a mistake made by one of the trial counsel. However, I believe that the issue becomes under Barbara right now. If you don't give a tender complete relief, then there has, it isn't moot. The argument here is it should be deemed moot for the purpose of not going back and certifying a class. Which may be form over substance because if the class, let's say the motion was filed. And the circuit court said, well, the clerk's promising not to do it. I don't think you need a class here because everybody promised protection, which is essentially their position here. There would be a hearing on that case. There would. And the court would most likely accept Ms. Weinstein's statement. We don't know. But then we would have that before us to consider. We do not today. I agree. And all I'm saying is I believe the tender here wasn't complete. To the extent it was complete, there is a public interest exception. Which I think counsel and I will agree on. It's clearly capable of repetition. We know that. And thank you for giving me the extended time today. I do appreciate it. Thank you. Thank you, counsel, for your argument this morning. We will take the matter under advisement. We're going to have a short recess to prepare for our next case.